# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

————————————

IN RE: EAST PALESTINE TRAIN DERAILMENT

————————————

MORGAN & MORGAN,

*Interested Party-Appellants*,

v.

ZOLL & KRANZ, LLC; BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C.; GRANT & EISENHOFER, P.A.; SIMMONS HANLY CONROY; LIEFF CABRASER HEIMANN & BERNSTEIN, LLP,

*Interested Parties-Appellees*.

————————————

On Appeal from the United States District Court for the Northern District of Ohio,
No. 23-cv-00242

————————————

## RESPONSE BRIEF FOR INTERESTED PARTIES-APPELLEES

————————————

PAUL D. CLEMENT
 *Counsel of Record*
MATTHEW D. ROWEN
KYLE R. EISWALD[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
[*] Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Interested Parties-Appellees*

May 2, 2025

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Sixth Circuit Rule 26.1, Interested Parties-Appellees state that no Interested Party-Appellee is a subsidiary or affiliate of a publicly owned corporation and no nonparty corporation has a financial interest in the outcome.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES.................................................................................. iii

STATEMENT REGARDING ORAL ARGUMENT........................................... vii

INTRODUCTION ................................................................................................. 1

JURISDICTIONAL STATEMENT ...................................................................... 5

STATEMENT OF THE ISSUES ........................................................................... 5

STATEMENT OF THE CASE................................................................................ 6

SUMMARY OF ARGUMENT............................................................................. 14

STANDARD OF REVIEW .................................................................................. 18

ARGUMENT ....................................................................................................... 19

I.    Morgan's Objections To The Quick-Pay Provision Are Meritless. .............. 19

      A.    Morgan Lacks Standing to Object to The Quick-Pay
            Provision............................................................................................ 19

      B.    The District Court Did Not Abuse Its Discretion in Rejecting
            Morgan's Late and Meritless Objections .......................................... 22

II.   Morgan's Objections To The Allocation Delegation Are Meritless. ............ 29

      A.    The District Court Did Not Abuse Its Discretion by
            Delegating Initial Allocation Authority to Co-Lead Class
            Counsel ............................................................................................... 29

      B.    The District Court Did Not Abuse Its Discretion in Approving
            Co-Lead Class Counsel's Allocation of Fees ..................................... 40

CONCLUSION ................................................................................................... 46

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

**Cases**

*Atl. Mut. Ins. Co. v. Comm'r*,
    523 U.S. 382 (1998) ......................................................................21

*Bowling v. Pfizer Inc.*,
    102 F.3d 777 (6th Cir. 1996) ........................................ 19, 35, 36, 37

*Chelf v. Prudential Ins. Co. of Am.*,
    31 F.4th 459 (6th Cir. 2022) ........................................................42

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) ........................................................22

*Gascho v. Glob. Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016) ........................................................30

*Hart v. BHH, LLC*,
    334 F.R.D. 74 (S.D.N.Y. 2020) ....................................................25

*Harvis v. Roadway Express, Inc.*,
    923 F.2d 59 (6th Cir. 1991) ................................................... 23, 24

*Hertz Schram PC v. FBI*,
    2014 WL 764682 (E.D. Mich. Feb. 25, 2014) ..............................42

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ......................................................................20

*In re Agent Orange Prods. Liab. Litig.*,
    818 F.2d 216 (2d Cir. 1987) ........................................................39

*In re Auto. Refinishing Paint Antitrust Litig.*,
    2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ................................ *passim*

*In re Bayer Healthcare & Merial Ltd. Flea Control
Prods. Mktg. & Sales Pracs. Litig.*,
    752 F.3d 1065 (6th Cir. 2014) ............................................... 23, 24

*In re Broadwing, Inc. ERISA Litig.*,
    252 F.R.D. 369 (S.D. Ohio 2006) ................................................30

*In re Brown*,
    248 F.3d 484 (6th Cir. 2001) ................................................................18

*In re Cap. Contracting Co.*,
    924 F.3d 890 (6th Cir. 2019) ........................................................ 20, 21

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ...............................................................37

*In re Flint Water Cases*,
    63 F.4th 486 (6th Cir. 2023) ................................................ 18, 20, 44

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
    517 F.3d 220 (5th Cir. 2008) ......................................................... 37, 38

*In re Lumber Liquidators Chinese-Manufactured Flooring*
*Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    952 F.3d 471 (4th Cir. 2020) ...............................................................26

*In re Polyurethane Foam Antitrust Litig.*,
    2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) .................................30

*In re Polyurethane Foam Antitrust Litig.*,
    168 F.Supp.3d 985 (N.D. Ohio 2016) .................................... 35, 36, 39

*In re Telectronics Pacing Sys., Inc.*,
    137 F.Supp.2d 1029 (S.D. Ohio 2001) .............................................30

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................. 30, 37, 39

*In re Wawa, Inc. Data Sec. Litig.*,
    85 F.4th 712 (3d Cir. 2023) .................................................................36

*In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*,
    2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ...............................26

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal., July 22, 2020) .................................26

*Intera Corp. v. Henderson*,
    428 F.3d 605 (6th Cir. 2005) ...............................................................19

*Lane v. City of LaFollette,*
    490 F.3d 410 (6th Cir. 2007) ...............................................................42

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................... 20, 22

*Mattingly v. R.J. Corman R.R. Grp. LLC,*
    90 F.4th 478 (6th Cir. 2024) ..............................................................19

*Pelzer v. Vassalle,*
    655 F.App'x 352 (6th Cir. 2016) ............................................... 25, 28

*Rawlings v. Prudential-Bache Props., Inc.,*
    9 F.3d 513 (6th Cir. 1993) ...................................................................25

*Robinson v. Shelby Cnty. Bd. of Educ.,*
    566 F.3d 642 (6th Cir. 2009) ..............................................................19

*Sekhar v. United States,*
    570 U.S. 729 (2013) .............................................................................23

*Smith v. Gen. Motors LLC,*
    988 F.3d 873 (6th Cir. 2021) ..............................................................24

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) .............................................................................20

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier,*
    262 F.3d 559 (6th Cir. 2001) ..............................................................22

*U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.,*
    525 F.3d 439 (6th Cir. 2008) ....................................................... 18, 42

*United States v. Akridge,*
    62 F.4th 258 (6th Cir. 2023) ..............................................................24

*United States v. Demmler,*
    655 F.3d 451 (6th Cir. 2011) ..............................................................24

*United States v. Reyes,*
    307 F.3d 451 (6th Cir. 2002) ..............................................................19

**Rules**

Fed. R. Civ. P. 23(e) ................................................................ 37

Fed. R. Civ. P. 23(h) ................................................................ 25

**Other Authorities**

David R. Herwitz & Matthew J. Barrett, *Accounting for Lawyers*
(2d ed. 1997) ................................................................ 21

Newberg & Rubenstein on Class Actions (6th ed. 2024) ...................................... 35

Charles Alan Wright et al., *Federal Practice and Procedure*
(2d ed. 2019) ................................................................20

**STATEMENT REGARDING ORAL ARGUMENT**

Interested Parties-Appellees respectfully submit that oral argument is unnecessary to resolve this appeal, which raises forfeited claims, factually inaccurate assertions, and legal arguments that courts have consistently rejected.

# INTRODUCTION

More than three dozen law firms worked to vindicate the rights of those whose lives were upended by the Norfolk Southern train derailment in East Palestine, Ohio. By any realistic measure, their efforts were remarkably successful, culminating in a $600,000,000 settlement to compensate for the injuries the derailment caused. More than 99% of class members support that resolution, and upwards of 50,000 victims filed claims to recover their shares of the fund class counsel secured. Yet all of that is obscured in the brief filed by T. Michael Morgan and his law firm, Morgan & Morgan, P.A. (together, "Morgan").[1] Morgan does not challenge any term of the settlement that affects class members—which makes sense, because he signed the agreement. Nor does he challenge the attorneys' fee award itself—which also makes sense, because he submitted a declaration expressing full support for not just the settlement, but the application for the attorneys' fees. Instead, Morgan objects to the process by which fees were allocated among the dozens of law firms that worked on the case. But for all his heated rhetoric and misdirected policy arguments, his appeal ultimately amounts to little more than sour grapes. The district court did not abuse its discretion in following a well-trod path this Court has blessed for the distribution of fees or in rejecting Morgan's dilatory arguments. This Court should affirm.

---

[1] Though Morgan and his law firm are the Appellants, we refer to them collectively in the singular for ease of reference and discussion.

As with many mass-tort and class-action cases, this case began not as one suit, but dozens. To aid in the coordination of the numerous suits that hit the docket after the derailment, the district court named as Interim Class Counsel three lawyers from three different firms (Seth Katz, M. Elizabeth Graham, and Jayne Conroy). Those three lawyers were later named Co-Lead Class Counsel and were further designated Co-Lead Counsel alongside a fourth lawyer, Morgan, who—while not among Interim or Co-Lead *Class* Counsel—was part of Interim Co-Lead Counsel and specifically assigned to represent individuals and entities who were not in the class but did not oppose the class structure. Multiple rounds of motions practice and mediations, and months of intensive discovery, later, the parties agreed to a nine-figure settlement. And after the district court overruled the small handful of objections, it approved the agreement (which itself preserves the court's jurisdiction over fees) in an order that made explicit that the court was retaining jurisdiction over all aspects of the settlement, including any ancillary orders issued in connection with it (such as those relating to the allocation or distribution of attorneys' fees). In one such related order, the court approved Co-Lead Counsel's request for attorneys' fees, which under the terms of the settlement could begin to be distributed upon final approval, and gave Co-Lead Class Counsel authority to allocate fees in a way that "fairly compensate[d] each attorney and/or firm for their contribution to the prosecution of Plaintiffs' class claims." Atty.Fee.Order, R.556, PageID#14578.

To describe all of that as commonplace would be to state the obvious. Yet to hear Morgan tell it, all those run-of-the-mill orders concealed a plot reminiscent of Game of Thrones. Morgan makes the startling claim that Co-Lead Class Counsel conspired to "ha[ve] [him] removed from" his appointed "role," convinced the district court to "abdicat[e]" any oversight authority, and then installed "themselves [as] the sole arbiters for attorney compensation" with unbridled authority to "lavish[] themselves" to the detriment of all other attorneys on the case. Morgan.Br.3-5. Morgan's brief certainly tells quite the tale. But it is a work of fiction.

First, there was no "abdication" by the district court. The district court made clear in approving the settlement that it "retain[ed] continuing and exclusive jurisdiction over this action for purposes of resolving issues relating to or ancillary to administration, consummation, interpretation, and enforcement of the Settlement Agreement," and further "retain[ed] jurisdiction for purposes of ensuring compliance with the terms of the Settlement Agreement *and any Order of the Court issued in connection therewith*." Final.Appr.Order, R.557, PageID#14586 (emphasis added); *see also* Settlement, R.452-2 §XVIII.L, PageID#6034 ("[A]ny disputes regarding fees, costs, and/or expenses amongst counsel, shall be subject to the exclusive jurisdiction of the Court."). Morgan never mentions that. Yet it is a complete answer to his charge that the district court should have "retain[ed] jurisdiction over the settlement agreement and fee allocation process to 'protect[]

against any potential abuse.'" Morgan.Br.40. After all, *that is precisely what the court did*. Furthermore, Morgan's rhetoric about Co-Lead Class Counsel's supposed intent to "exploit the common fund for their own benefit," Morgan.Br.40, runs headlong into reality: Not a single lawyer from a single law firm complained to the district court about their fee allocation. This is not a case of palace intrigue, or of self-dealing. It is the case of the dog who did not bark.

Morgan's remaining objections are equally specious. Long after the objection deadline passed, Morgan moved for reconsideration of the order approving the distribution of attorneys' fees, arguing that no fees should be distributed until after the conclusion of all objector appeals. But Morgan himself signed the settlement agreement, Settlement, R.452-2, PageID#6038, which expressly states that "[t]he Fee Award awarded to Class Counsel will be paid [out] … within fourteen (14) days after the grant of Final Approval," *id.* §XIV.D, PageID#6028. He also submitted a sworn declaration "fully support[ing] … Class Counsel's motion for Final Approval of the Settlement and the application for attorneys' fees." Morgan.Decl. ¶8, R.518-9, PageID#11184. That suffices to foreclose his belated complaints. Indeed, Morgan does not even have standing to press this argument, given that this aspect of the settlement caused him no injury. And all that aside, his arguments fail on the merits. The district court did not abuse its discretion in approving a common feature in class-action settlements. This Court should affirm.

4

## JURISDICTIONAL STATEMENT

Appellees do not dispute Morgan's jurisdictional statements.[2]

## STATEMENT OF THE ISSUES

1. Whether Morgan has Article III standing to challenge the quick-pay aspect of the settlement agreement; and assuming *arguendo* that he does, whether the district court abused its discretion in approving the distribution of attorneys' fees and rejecting Morgan's waived, untimely, and meritless objection to it.

2. Whether the district court abused its discretion in following the common practice of delegating to Co-Lead Class Counsel the authority to allocate attorneys' fees among the various Plaintiffs law firms while maintaining its ultimate jurisdiction to review allocations if any firm had objected.

3. Whether the district court abused its discretion by not digging into Co-Lead Class Counsel's allocation methodology when there was no complaint from a firm about its specific allocation before the court and where the court had retained authority to review the allocation methodology if such a complaint were to arise.

---

[2] Morgan named Zoll & Kranz, LLC, Burg Simpson Eldredge Hersh & Jardine, P.C., Grant & Eisenhofer P.A., Simmons Hanly Conroy, and Lieff Cabraser Heimann & Bernstein, LLP, as Appellees. Morgan.Not.App., R.713, PageID#51604. Neither Zoll & Kranz, LLC, nor Lieff Cabraser Heimann & Bernstein, LLP, were represented among Co-Lead Class Counsel, to whom Morgan's arguments are addressed. This brief will hereinafter refer to Appellees as "Co-Lead Class Counsel."

## STATEMENT OF THE CASE

### A.    Factual and Procedural Background

1. This case arises out of the derailment of Norfolk Southern Train 32N in East Palestine, Ohio, on February 3, 2023. In the wake of the derailment and the subsequent "vent and burn" of five rail cars, 1st.Am.Master.Class.Action.Compl. (hereinafter "Operative Complaint" or "Oper.Compl."), R.138 ¶¶179, 183-85, 279, PageID#1802, 1804, 1830-833, affected individuals and businesses retained lawyers, and multiple lawsuits were filed, Graham.Decl., R.518-2 ¶¶13-14, PageID#10945-946. Given the multiplicity of suits, the district court ordered lawyers Seth A. Katz and M. Elizabeth Graham to coordinate a motion for proposing a class counsel structure, a Joint Status Report, and related briefing, and further ordered lawyer Jayne Conroy to file all documents. Coord.Order, R.20, PageID#133. After receiving the filings and conducting a hearing, the court consolidated 31 pending cases into one master class action, appointed Mr. Katz, Ms. Graham, and Ms. Conroy as Interim Class Counsel, and named those three plus T. Michael Morgan, who was appointed to "represent individuals and entities who … elected to file cases outside the class action, but [we]re not opposed to the

class structure," as Interim Co-Lead Counsel. Cons.Order, R.28, PageID#562-563 & n.3, 569.[3]

2. The class action proceeded through early motions practice and discovery. While discovery was ongoing, Plaintiffs' counsel and Norfolk Southern entered negotiations. In October 2023, Plaintiffs' counsel (including Morgan) and Norfolk Southern engaged in a two-day mediation with retired United States District Judge Layn R. Phillips. Graham.Decl., R.518-2 ¶53, PageID#10955. Those discussions ended without agreement, but the parties continued informal negotiations throughout the following months. *Id.* ¶¶54-55, PageID#10956. The parties (again, including Morgan) attended a second formal mediation with Judge Phillips in February 2024. *Id.* ¶56. That mediation also ended without agreement, but the parties engaged in near-daily discussions filtered through Judge Phillips and his team. *Id.* Finally, after the months-long back-and-forth, Judge Phillips presented a mediator's recommendation, which all parties accepted. *Id.* ¶58, PageID#10957. Interim Co-Lead Counsel (including Morgan) announced an agreement with Norfolk Southern in early April 2024, and the parties executed the settlement agreement ("Settlement") on April 26, 2024. *Id.* ¶60.

---

[3] A 32nd case was added to the consolidation later in the litigation. *See* Cons.Order, R.30, PageID#666.

3. The Settlement creates a non-reversionary cash fund of $600,000,000. Settlement, R.452-2 §II.SS, PageID#6014; *see* Fair.Hear.Tr., R.553, PageID#14504 (testimony that this amount exceeds all recoveries in other similar cases). Under the terms of the Settlement, that amount (less administrative expenses, fee awards, and service awards, *see* Settlement, R.452-2 §XIII.B, PageID#6022-023) is to be allocated to members of the "all Persons and Businesses residing, owning[,] or otherwise having a legal interest in property, working, or owning or operating a business within a 20-mile radius of the Derailment Site, from February 3, 2023 to the Settlement Date," *id.* §II.QQ, PageID#6013.

Relevant to this appeal, the Settlement contains provisions regarding "Attorneys' Fees and Costs," which state:

D. The Fee Award awarded to Class Counsel will be paid from the Settlement Fund into the Escrow Account pursuant to Section XII.F (*i.e.*, within fourteen (14) days after the grant of Final Approval) and wired from the Escrow Account to an account number identified by Class Counsel. If, however, at the time of the grant of Final Approval the Court has not issued its order on the Fee Award, Class Counsel will be paid from the Escrow Account to an account number identified by Class Counsel within two (2) business days of such order on the Fee Award.

E. If this Settlement is terminated pursuant to Section XI or modified or reversed in any material respect by a final order of any appellate court, or if the Fee Award is modified or reversed on any appeal, Class Counsel shall return to Norfolk Southern any and all attorneys' fees and costs previously paid to Class Counsel as any part of the Fee Award, plus accrued interest at the same net rate as is earned by the Settlement Fund, within fourteen (14) days of such termination or entry of an order on appeal modifying or reversing Final Approval or the Fee Award.

Settlement, R.452-2 §XIV.D-E, PageID#6028-029. Provision D describes what is known as a "quick-pay" method of distributing attorneys' fees. *See* Mot.to.Clarify.Order, R.689, PageID#51086 (discussing the provision). Provision E is a repayment requirement.

In addition to those provisions, the Settlement specifically provides that the district court retains jurisdiction over any disputes regarding attorneys' fees:

> Any dispute regarding the interpretation or validity of, or otherwise arising out of, this Agreement, or relating to the Action or the Released Claims, including *any disputes regarding fees, costs*[,] *and/or expenses amongst counsel, shall be subject to the exclusive jurisdiction of the Court* and shall be decided pursuant to the laws of the State of Ohio. The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith….

Settlement, R.452-2 §XVIII.L, PageID#6034 (emphasis added).

4. Morgan signed the Settlement along with other Co-Lead Counsel. *Id.*, PageID#6038. On the same day they signed the Settlement, Plaintiffs moved for preliminary approval of the Settlement and appointment of Interim Class Counsel as Lead Class Counsel. Pls'.Prelim.Appr.Mot., R.452, PageID#5955. The district court preliminarily approved the Settlement and appointed the three Interim Class Counsel (Mr. Katz, Ms. Graham, and Ms. Conroy) as Lead Class Counsel. Prelim.Appr.Order, R.458 ¶¶2-4, PageID#6174-176. In the same order, the court outlined how objections to the Settlement were to be made, *id.* ¶16, PageID#6179, and set an objection deadline of July 1, 2024, *id.* ¶23, PageID#6182.

Plaintiffs later filed motions for final approval of the Settlement and for attorneys' fees, each with an accompanying memorandum of law supporting the motion; Morgan's signature block is on each document. *See* Pls'.Final.Appr.Mot., R.518, PageID#10896-897; Pls'.Memo.ISO.Final.Appr.Mot., R.518-1, PageID#10899-939, 10940; Pls'.Atty.Fee.Mot., R.520, PageID#11304, 11305; Pls'.Memo.ISO.Atty.Fee.Mot., R.520-1, PageID#11307-349, 11350. Morgan also submitted a declaration supporting the motions for final approval and for attorneys' fees. Morgan.Decl., R.518-9, PageID#11183-185. In that declaration, Morgan was emphatic: "I fully support the $600 million class settlement and Class Counsel's motion for Final Approval of the Settlement and the application for attorneys' fees, requested as a percentage of the common fund." *Id.* ¶8, PageID#11184.

5. A party not before this Court objected to Plaintiffs' motion for attorneys' fees on the ground that it did "not address how the attorneys' fees and expense reimbursements … sought w[ould] be distributed among Class Counsel." Hall.Objection, R.526 ¶¶1-2, PageID#11569. On September 23, 2024, Co-Lead Counsel responded to the objection and added language to the proposed order for attorneys' fees reflecting that Co-Lead Class Counsel (which does not include Morgan) would have authority to "distribute the fees in a manner that, in the[ir] judgment …, fairly compensate[d] each firm for its contribution to the prosecution of Plaintiffs' claims." Pls'.Reply.ISO.Atty.Fee, R.538, PageID#12344-349; *see*

Rev.Prop.Atty.Fee.Order, R.538-5, PageID#12396, 12399-400. Morgan's signature block is on Plaintiffs' reply to the objection. Pls'.Reply.ISO.Atty.Fee, R.538, PageID#12349. Both the reply and the revised proposed order were filed publicly on the district court's docket.

The district court held a fairness hearing two days later, which Morgan attended. Fair.Hear.Tr., R.553, PageID#14429. At the hearing, Mr. Katz on behalf of Co-Lead Class Counsel—and without objection from Morgan—requested that the court grant authority to Co-Lead Class Counsel to allocate the attorneys' fees, following the lead of another case in the District and "the well-established principle that … appointed *class counsel*[] are best suited to apportion fees to those firms who perform[ed] work that benefited *the class*." *Id.*, PageID#14523 (emphases added). On September 27, 2024, the district court granted Plaintiffs' attorneys' fees motion and gave "Co-Lead Class Counsel authority to distribute the fees in a manner that, in the judgment of Co-Lead Class Counsel, fairly compensate[d] each attorney and/or firm for their contribution to the prosecution of Plaintiffs' class claims. Atty.Fee.Order, R.556, PageID#14578. The district court also reiterated the Settlement's express retention of "jurisdiction" over "any disputes regarding fees, costs[,] and/or expenses amongst counsel," Settlement, R.452-2 §XVIII.L, PageID#6034, making clear in its separate order granting final approval that it would "retain[] continuing and exclusive jurisdiction over this action for purposes of

11

resolving issues relating to or ancillary to administration, consummation, interpretation, and enforcement of the Settlement Agreement," and further would "retain[] jurisdiction for purposes of ensuring compliance with the terms of the Settlement Agreement and any Order of the Court issued in connection therewith," Final.Appr.Order, R.557, PageID#14586.

6. Almost a month later (in October 2024), Morgan moved ostensibly under Federal Rules of Civil Procedure 59(e) and 60(b) for the district court to "enjoin the distribution of attorney fees pending the resolution of appeals" and "amend the fee Order … to include a process for judicial review of the fee allocation and appoint [him] to participate in the allocation process." Morgan.Mot.to.Clarify, R.664, PageID#46330; *see also* Morgan.Memo.ISO.Mot.to.Clarify, R.664-1, PageID#46336-344. In his supporting memorandum, Morgan asserted, without substantiation, that he had not approved the brief proposing that Co-Lead Class Counsel would have authority to allocate the fees among counsel in the first instance. Morgan.Memo.ISO.Mot.to.Clarify, R.664-1, PageID#46336.

The district court conducted a telephonic conference with Morgan and Co-Lead Class Counsel to discuss Morgan's motion. Mot.to.Clarify.Order, R.689, PageID#51079. After considering the parties' arguments, the record, and Morgan's memorandum in support of his motion, the court denied Morgan's motion, treating it as analogous to a discovery dispute. *Id.*, PageID#51079, 51085.

Regarding the quick-pay provision, the district court pointed to Settlement section XIV.D, which indicates that the fee award would be distributed within fourteen days of final approval, *id.*, PageID#51080, emphasized that Morgan signed the Settlement, *id.*, and explained that any objection to that provision of the Settlement was untimely because the cutoff date for objections was July 1, *id.*, PageID#51086. And concerning the allocation authorization, the court noted that Morgan attended the fairness hearing where Co-Lead Class Counsel requested authority to allocate the attorneys' fees, and Morgan did not object. *Id.*, PageID#51081.

The district court also rejected Morgan's challenges to the "model and methodology" Co-Lead Class Counsel used "in allocating fees." *Id.*, PageID#51082. As the court explained, Co-Lead Class Counsel started with the number of approved hours for each firm based on the process set forth in a case management order. *Id.*, PageID#51083 (citing Expense.Guide.Order, R.33, PageID#787-794). From this objective number of approved hours, Co-Lead Class Counsel backed out the first level of document-review hours for each firm, each of which received a $150-per-hour reimbursement rate. *Id.* All non-document-review hours were then weighted based on various multipliers, including whether the firm was Co-Lead Counsel (including Morgan), part of the Plaintiffs' Executive Committee, Plaintiffs' Steering Committee, or another committee. *Id.* The weights of these multipliers were based

in part on the firms' respective contributions to the funding of the litigation—a factor with which Co-Lead Class Counsel had intimate familiarity. *Id.* The type of work performed also received a multiplier, and the type-of-work multipliers applied equally to all firms regardless of leadership or committee membership status. *Id.* Finally, time spent staffing the Claims Center that class counsel had established for helping East Palestine residents file claims received a multiplier, while time spent helping individually retained clients did not, as working with those clients was not for the common benefit of the class. *Id.*, PageID#51084. After detailing this methodology, the court found that "[a] comparison of the submission of hours for the respective" Co-Lead Counsel law firms (which included Morgan), showed that Morgan's firm had the lowest number of approved hours among the four. *Id.*

Finally, the district court reaffirmed its decision to grant allocation authority only to Co-Lead Class Counsel, noting that "Morgan—as non-class counsel—[wa]s not entitled to be part of the process in allocating the class fee." *Id.*, PageID#51088.

## SUMMARY OF ARGUMENT

Morgan's appeal simply rehashes the untimely and unavailing arguments the district court correctly rejected. This Court should affirm.

**I.** Morgan's complaint about the quick-pay provision aspect of the Settlement fails on (at least) three fronts. First, Morgan lacks standing to object because that provision—and the district court's approval of it—did not adversely affect him. In

fact, that provision *benefited* Morgan, as it entitled him to a timely payment. Second, Morgan's objection came too late, as any objections to the Settlement were due on July 1, 2024, but he did not object until almost four months later. Indeed, it is unclear that Morgan could press this objection *at all*, given that he signed the Settlement Agreement (which made the terms of fee payment explicit) and filed a sworn declaration supporting it, raising the specter of invited error. Finally, threshold issues aside, Morgan's objection fails on the merits. Quick-pay provisions are common features of class-action settlement agreements, and this Court has previously endorsed them so long as they do not affect the overall award to the class, which the provision here plainly does not. There was nothing remotely problematic with following that commonplace course here.

**II.** The district court likewise acted well within its discretion in delegating the initial allocation of attorneys' fees to Co-Lead Class Counsel, while retaining authority to resolve any intra-counsel disputes, should they arise in timely fashion. As with quick-pay provisions, delegations to lead class counsels to divide attorneys' fees among plaintiffs' firms are commonplace both in this Circuit and elsewhere. They are common because they accord with common sense: Lead class counsels "are most familiar with the work done by each firm and each firm's overall contribution to the litigation." *In re Auto. Refinishing Paint Antitrust Litig.*, 2008 WL 63269, at *7 (E.D. Pa. Jan. 3, 2008). And, here, Co-Lead Class Counsels' deep

knowledge of the behind-the-scenes work on the litigation was the reason the court cited for delegating allocation authority to them, while specifically retaining jurisdiction to superintend any allocation disputes should they arise. *See* Atty.Fee.Order, R.556, PageID#14574 (quoting *Auto. Refinishing*, 2008 WL 63269, at *7); Mot.to.Clarify.Order, R.689, PageID#51088.

**A.** Contrary to Morgan's assertions, the district court did not "abdicate" its authority in the slightest. The court retained jurisdiction over all aspects of the Settlement, including with respect to attorneys' fees, which allowed it to review any timely allocation objections that may have arisen. *See* Final.Appr.Order, R.557, PageID#14586; *see also* Settlement, R.452-2 §XVIII.L, PageID#6034 (express retention of "jurisdiction" over "any disputes regarding fees, costs[,] and/or expenses amongst counsel"). And nothing in Rule 23(h) prevents the district court from delegating initial allocation authority while maintaining ultimate review authority. *Contra* Morgan.Br.33-36. Morgan misreads Rule 23(h) and its Advisory Committee Notes, mischaracterizes the caselaw, and relies on secondary authorities suggesting that a court cannot completely surrender its review authority—which, again, this district court *did not do*. As a last resort, Morgan engages in unfounded speculation that Co-Lead Class Counsel might take all the funds for themselves, "leaving their co-counsel penniless," Morgan.Br.35, or "buy off" other firms with side agreements, Morgan.Br.35, or "pick winners and losers among the plaintiffs' firms."

Morgan.Br.37-38. If any of that had even the slightest iota of validity, then one would expect any of the myriad other firms to have vociferously objected. But no other firm has complained about its allocated share. That silence is deafening.

At the end of the day, Morgan is simply upset that Co-Lead Class Counsels' methodology did not give him special treatment and reward him with higher pay for less work. But the district court's delegation of initial allocation authority to Co-Lead Class Counsel was not an abuse of discretion. Nor was it an abuse to exclude Morgan from the allocation process. Morgan may now regret how many fewer hours his firm contributed in relation to the other firms, but approving an allocation that reflects that objective disparity does not constitute an abuse of discretion; quite the opposite—it constitutes strict adherence to a lodestar and multiplier allocation that mirrored the trajectory of the litigation. The district court acted reasonably in delegating the attorneys' fee award allocation authority to Co-Lead Class Counsel.

**B.** Finally, the district court not only maintained its review authority over allocations, but reasonably found that Co-Lead Class Counsel's objective, hours-based methodology that applied multipliers based on a firm's role in the litigation was proper. Morgan faults the court for not digging into the methodology for more granularity, Morgan.Br.41-44, but there was no need for the court to do so as no firm has complained that the methodology led to it receiving less than what it was owed. Morgan asserts that he made such a complaint below, *see* Morgan.Br.36-37, but that

issue was only mentioned during a telephonic conference and was not raised in Morgan's motion to clarify, so it was not properly before the district court. *See, e.g.*, *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 450 n.6 (6th Cir. 2008).

Left with no substantive arguments, Morgan casts more aspersions against Co-Lead Class Counsel for using multipliers he asserts no one understands, and he accuses Co-Lead Class Counsel of self-dealing and favoritism. Such baseless allegations strain credulity given that no other firm has objected to its allocation, which certainly would have happened if Co-Lead Class Counsel had engaged in the nefarious behavior of which it has been accused. In a situation where all lawyers were treated the same relative to their position and type of work—and not a single firm has raised a specific objection to the proposed allocation—it was reasonable for the district court to not dig into the allocation methodology with granularity while maintaining its authority to do so should a timely objection arise. There was no abuse of discretion. This Court should affirm.

## STANDARD OF REVIEW

This Court "has an independent obligation to examine its own jurisdiction," *In re Flint Water Cases*, 63 F.4th 486, 497 (6th Cir. 2023), and it reviews jurisdictional issues, including standing, de novo, *see id.* at 502-03; *cf. In re Brown*, 248 F.3d 484, 486 (6th Cir. 2001).

Regardless of whether Morgan's motion to clarify is treated as a Rule 59(e) and Rule 60(b) motion (as he claims, *see* Morgan.Memo.ISO.Mot.to.Clarify, R.664-1, PageID#46338; Morgan.Br.19-20) or as a discovery dispute (as the district court saw it, Mot.to.Clarify.Order, R.689, PageID#51085), this Court reviews the district court's decision denying it under the deferential abuse-of-discretion standard. *See Intera Corp. v. Henderson*, 428 F.3d 605, 619 (6th Cir. 2005) (Rule 59(e)); *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (Rule 60(b)); *Mattingly v. R.J. Corman R.R. Grp. LLC*, 90 F.4th 478, 484 (6th Cir. 2024) (discovery rulings). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). This deference acknowledges that a district court's "familiarity with the litigants and the litigation … is a valuable asset which should not lightly be discarded." *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009).

Finally, the district court's factual findings are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a). *Id.* at 647.

## ARGUMENT

### I. Morgan's Objections To The Quick-Pay Provision Are Meritless.

#### A. Morgan Lacks Standing to Object to The Quick-Pay Provision.

Morgan objects to the Settlement's "quick-pay" provision on the ground that it "gives the attorneys preferred access to the settlement fund and could jeopardize their clients' ability to recover." Morgan.Br.23; *see* Settlement, R.452-2 §XIV.D,

PageID#6028-029. This objection to a commonplace term in class-action settlements is meritless. It is also untimely. But there is an even more fundamental problem with the argument: Morgan lacks standing to appeal the approval of a settlement provision that causes him no injury—and, in fact, benefits him.

"As the Supreme Court has explained, Article III 'standing must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.'" *In re Cap. Contracting Co.*, 924 F.3d 890, 897 (6th Cir. 2019) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013)). "On appeal, [however], 'the focus shifts to injury caused by the judgment rather than injury caused by the underlying facts.'" *Id.* (quoting 15A Charles Alan Wright et al., *Federal Practice and Procedure* §3902 (2d ed. 2019)). That means Morgan "must show that" the district court's approval of the Settlement with the quick-pay provision caused him to "suffer[] 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see Flint*, 63 F.4th at 503 ("[A]n objector who does not have an injury-in-fact lacks standing to appeal an aspect of a class-action settlement that does not adversely affect his own interests.").

He cannot do so. "A particularized injury affects the party in a specific way (in contrast to a generalized grievance), and a concrete injury affects the party in a

real way (in contrast to an abstract grievance)." *In re Cap. Contracting*, 924 F.3d at 897. Morgan has neither. "Even assuming, for example, that the proposed appeal would" benefit members of the class, "that reversal could not provide [Morgan] with one cent more in attorney's fees." *Id.* Indeed, Morgan concedes that the Settlement generally and cumulative fee award specifically are fair. Morgan.Br.23. "The order" approving the Settlement "thus did not affect [him] in a 'personal and individual way.'" *In re Cap. Contracting*, 924 F.3d at 897-98. In fact, Morgan stood *to benefit* from the quick-pay distribution. Had Morgan not (belatedly) objected, he could have received his share of the fee award as early as October 7, 2024. *See* Morgan.Memo.ISO.Mot.to.Clarify, R.664-1, PageID#46335 (acknowledging that Co-Lead Class Counsel emailed him asking for wiring instructions for his allocation). And it is a basic principle of economics that "[a] dollar today is worth more than a dollar tomorrow." *Atl. Mut. Ins. Co. v. Comm'r*, 523 U.S. 382, 384 (1998) (alteration in original) (quoting David R. Herwitz & Matthew J. Barrett, *Accounting for Lawyers* 221 (2d ed. 1997)) (discussing the "time value of money"). Because the quick-pay provision redounded to Morgan's benefit (and certainly not to his detriment), he lacks appellate standing to pursue this claim.[4]

---

[4] Finally, to the extent Morgan's complaint involves the potential that a reversal of the Settlement on appeal would be injurious because firms would have to return their share, *see* Morgan.Br.24-25, this argument fails because it once again does not explain how that is an injury to *Morgan*; it is also too speculative. An injury-in-fact

**B.     The District Court Did Not Abuse Its Discretion in Rejecting Morgan's Late and Meritless Objections.**

Even if this Court concludes that Morgan has standing to object to the approval of the quick-pay provision in the Settlement, it should still affirm that aspect of the district court's rulings because the district court was well within its discretion in denying Morgan's challenge.

1. As a preliminary matter, and even assuming Morgan has appellate standing, *but see supra*,[5] the district court acted well within its discretion in denying this part of Morgan's motion on the ground that it was untimely.  Mot.to.Clarify.Order, R.689, PageID#51086.  The court-imposed cutoff date for objections to the Settlement was July 1, 2024.  Prelim.Appr.Order, R.458 ¶23, PageID#6182.  Morgan missed the deadline *by almost four months*.  And if litigants are required to meet court-imposed deadlines, then that goes for lawyers *a fortiori*.

Morgan attempts to downplay his lack of diligence by asserting that "the problems with the quick-pay provision didn't become relevant until after the

---

must be "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (quotation marks omitted).  Any fear about having to return distributed fees should a separate case be decided adversely on appeal falls squarely within the "conjectural or hypothetical" category, so it cannot support an injury in fact.

[5] Non-class members also typically lack standing under Rule 23 to object to the terms of a class-action settlement.  *See, e.g.*, *Fidel v. Farley*, 534 F.3d 508, 515 n.5 (6th Cir. 2008); *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 566 (6th Cir. 2001).

settlement was approved and the objectors noticed their appeals, thereby precluding many of the plaintiffs from recovering their share of the settlement proceeds." Morgan.Br.14; *see also* Morgan.Br.45 (similar). That is risible. Indeed, the notion that Morgan, an experienced plaintiffs' attorney, did not contemplate that an appeal would slow down payments to the class while allowing payments to the attorneys "sounds absurd, because it is." *Sekhar v. United States*, 570 U.S. 729, 738 (2013).

2. That is not the only problem with Morgan's position. Long before he filed an untimely objection, Morgan not only signed the Settlement Agreement as Co-Lead Counsel, *see* Settlement, R.452-2, PageID#6038, but submitted a sworn declaration "fully support[ing] … Class Counsel's motion for Final Approval of the Settlement and the application for attorneys' fees," Morgan.Decl. ¶8, R.518-9, PageID#11184. And, as explained above, the Settlement Agreement is explicit that "[t]he Fee Award awarded to Class Counsel will be paid [out] … within fourteen (14) days after the grant of Final Approval," Settlement, R.452-2 §XIV.D, PageID#6028, which is obviously before any appeals will be resolved.

Morgan's challenge thus squarely implicates "the doctrine of invited error," which "[t]his [C]ourt has described … as a 'cardinal rule of appellate review.'" *In re Bayer Healthcare & Merial Ltd. Flea Control Prods. Mktg. & Sales Pracs. Litig.*, 752 F.3d 1065, 1072-73 (6th Cir. 2014) (quoting *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 61 (6th Cir. 1991)); *see also id.* at 1072-73 (noting that "courts apply

the invited error doctrine to 'a wide range of conduct'" (quoting *Harvis*, 923 F.2d at 60-61)). "[T]he doctrine of invited error prevents a party from inducing a court to follow a course of conduct and then 'at a later stage of the case us[ing] the error to set aside the immediate consequences of the error.'" *Id.* at 1072 (second alteration in original) (quoting *Harvis*, 923 F.2d at 61). Yet that is precisely what Morgan seeks here. "Because [Morgan] asked the district court to [approve the Settlement], the doctrine of invited error prevents [Morgan] from now complaining that the district court did so." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 879 (6th Cir. 2021). This Court can and should affirm the district court's rejection of this argument on that basis alone.[6]

3. If this Court nonetheless reaches the merits, it should still affirm. It is important to underscore at the outset that Morgan does not object to the reasonableness of the collective fee award. The district court awarded class counsel 27% of the total settlement amount, Atty.Fee.Order, R.556, PageID#14578, and Morgan agrees that number is fair, Morgan.Br.23. He thus faces a considerable

---

[6] This Court "will only review an invited error if the inviting party shows that failing to do so 'would result in manifest injustice.'" *United States v. Akridge*, 62 F.4th 258, 264 (6th Cir. 2023) (quoting *United States v. Demmler*, 655 F.3d 451, 458 (6th Cir. 2011)). "But here, [Morgan] hasn't satisfied his burden to demonstrate manifest injustice. In fact, he didn't even mention it in his [opening] brief[]." *Id.* There is thus no basis "to 'relieve him of the consequences' of his invited error (assuming there was an error)," *id.* (quoting *In re Bayer*, 752 F.3d at 1073), which, as explained below, there decidedly was not.

uphill climb. The Federal Rules and this Court's caselaw require that attorneys' fee awards in common-fund cases be reasonable, *see* Fed. R. Civ. P. 23(h); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993), and the timing of those payments—which is all Morgan challenges—has no effect either on the award or on its relation to the class' total recovery. Indeed, for all his overwrought prose, Morgan nowhere denies that class counsel must repay any amount if the Settlement is ultimately rejected. *See* Settlement, R.452-2 §XIV.E, PageID#6029. That not only "refutes the inference that the quick-pay provision is some sort of money-grab by class counsel to the detriment of the class," but confirms that the provision will not "harm the class members in any discernible way, as the size of the settlement fund available to the class [is] the same regardless of when the attorneys get paid." *Pelzer v. Vassalle*, 655 F.App'x 352, 365 (6th Cir. 2016).

Morgan asserts that "[s]ome federal courts have retreated from the assumption that 'there is no harm to the class by paying attorneys first' so long as 'the size of the settlement fund available to the class will be the same.'" Morgan.Br.24 (quoting *Hart v. BHH, LLC*, 334 F.R.D. 74, 78 (S.D.N.Y. 2020)). But Morgan's reliance on a single out-of-Circuit district court's conclusory "disagree[ment]" with this Court's opinion in *Pelzer* does not move the needle. To be sure, *Pelzer* is not precedential. But its analysis is unimpeachable—which explains why a chorus of courts both in and out of this Circuit has looked to *Pelzer* in reviewing (and rejecting objections

like Morgan's to) quick-pay provisions. *See, e.g.*, *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *40 (N.D. Cal., July 22, 2020); *In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, 2016 WL 5338012, at *20-21 (N.D. Ohio Sept. 23, 2016). At bottom, it was not an abuse of discretion for the district court here to do something which this Court has itself condoned and never condemned.[7]

That is all the more true given that Morgan does not cite a single instance in which the doomsday scenarios he prophesizes has ever come to pass—or any reason to believe that this case would be the first. Morgan speculates that it might be difficult for the law firms to return the $162 million they were awarded (plus interest) within two weeks in the event this Court reverses the Settlement approval, given that "[l]aw firm revenues don't sit in a bank account." Morgan.Br.24. But as the district court correctly noted in denying Morgan's motion to clarify, this is "[m]ere speculation." R.689, PageID#51087). Indeed, *contra* Morgan.Br.25, it is speculation twice over. There is no reason to think this Court will agree with the objectors in the other appeals on the reasonableness of the cumulative attorneys' fee

---

[7] The district court also did not need to appoint a special master, *contra* Morgan.Br.26. While appointment of a special master may have been an option for the district court, Morgan points to no authority that such an appointment was required, so it cannot be said that the court abused its discretion by not doing so.

amount (or any other objection raised in those cases), as the district court thoroughly explained its reasoning in granting Class Counsel's request for attorneys' fees equal to 27% of the settlement fund. *See* Atty.Fee.Order, R.556, PageID#14562-575. And even in the exceedingly unlikely event that this Court agrees with the objectors and reverses, there is no reason to think that the firms would be unable to fulfill their return-clause obligations. After all, each firm knows it is required to repay its allocated fee according to section XIV.E if the Settlement is "modified or reversed in any material respect by a final order" of this Court. Settlement, R.452-2 §XIV.E, PageID#6029. The district court's approval of the quick-pay provision was reasonable, and Morgan's speculation-on-speculation approach simply cannot prevail in the face of this Court's deferential review of that decision.

Finally, Morgan engages in a long excursus effectively encouraging this Court to hold that the district court abused its discretion because quick-pay provisions may not achieve a goal of deterring frivolous objections. *See* Morgan.Br.27-30. In arguing that district courts (and this Court) should not allow quick-pay provisions because they do not deter frivolous appeals, however, Morgan engages in the very thing he condemns—policymaking by the wrong actors. Morgan's bare appeals to policy have no place in this Court's assessment of whether the district court abused its discretion in approving a quick-pay provision as reasonable. They are also misguided on their own terms. Morgan suggests that quick-pay provisions "weaken

the urgency for counsel to seek redress for the settlement class" because counsel has already received its payment, and argues that "this Court should scrutinize quick-pay provisions with great skepticism—and perhaps abolish them altogether." Morgan.Br.29. But Morgan's assessment of the incentives makes no sense. Class counsels who receive payments under a quick-pay provision often (as in this case) operate under the cloud of a repayment clause. *See, e.g.*, *Pelzer*, 655 F.App'x at 365. Counsel thus has every incentive to seek redress zealously for the class on appeal. After all, if the objectors' appeals reverse or materially modify the Settlement in this case, then each class counsel firm must return its allocated fees within two weeks. Settlement, R.452-2 §XIV.E, PageID#6029.

At the end of the day, this Circuit has recognized that quick-pay provisions are common and has held that they are not unreasonable, so long as they do not affect the total amount that class members will receive from a settlement. *See, e.g.*, *Pelzer*, 655 F.App'x at 365. It reached this holding not because of some assessment of the deterrence effect a quick-pay provision has on frivolous objections, but because it concluded that there was no harm to the class. *Id.* The district court did not abuse its discretion in reaching the same conclusion here.

**II. Morgan's Objections To The Allocation Delegation Are Meritless.**

**A. The District Court Did Not Abuse Its Discretion by Delegating Initial Allocation Authority to Co-Lead Class Counsel.**

Morgan takes issue with the district court's decision to allow Co-Lead Class Counsel to make the initial allocation of attorneys' fees among the various firms. Morgan.Br.31-41. But, at its core, Morgan's gripe amounts to nothing more than disappointment that he was not part of the group that received the delegated authority to allocate attorneys' fees in the first instance and dissatisfaction that his "critical role" was not valued enough (in his opinion). Morgan.Br.36-40. Neither complaint amounts to an abuse of discretion. It is common practice for a district court to delegate allocation of fees to lead class counsel while retaining jurisdiction to review those allocations should any objections to specific allocations arise. That is exactly what the district court did here; it did not "abdicate" its responsibility. Nothing in Morgan's brief undermines the reasonableness of the district court's decisions on this front, as Morgan mischaracterizes what the district court did, misunderstands Rule 23(h), and engages in rank (and insulting) speculation about Co-Lead Class Counsel. The district court did not abuse its discretion in rejecting Morgan's claims.

1. "Courts generally approve joint fee applications which request a single aggregate fee award with allocations to specific firms to be determined by Co–Lead Counsel, who are most familiar with the work done by each firm and each firm's overall contribution to the litigation." *In re Auto. Refinishing Paint Antitrust Litig.*,

2008 WL 63269, at *7; *see also, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269, at *8 (N.D. Ohio Feb. 26, 2015); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 383 (S.D. Ohio 2006); *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 1029, 1033 (S.D. Ohio 2001). The district court acted well within its discretion in rejecting Morgan's request to "deviate from the accepted practice of allowing counsel to apportion fees amongst themselves." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n.15 (3d Cir. 2004); *cf. Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 286 (6th Cir. 2016) (highlighting "a district court's discretion" to determine "how to value the benefit provided to the class" by lawyers).

The district court's order granting attorneys' fees authorized Co-Lead Class Counsel "to distribute the fees in a manner that, in the judgment of Co-Lead Class Counsel, fairly compensate[d] each attorney and/or firm for their contribution to the prosecution of Plaintiffs' class claims." Atty.Fee.Order, R.556, PageID#14578; *see also* Mot.to.Clarify.Order, R.689, PageID#51088. Following this "accepted practice" here, *Warfarin*, 391 F.3d at 533 n.15, made good sense for the same reason that the practice has become so widely accepted: Lead class counsels are the ones who "direct[ a] case from its inception," and thus "are best able to assess the weight and merit of each counsel's contribution." *Auto. Refinishing*, 2008 WL 63269, at *7. And that is plainly true of Co-Lead Class Counsel here. Indeed, while Morgan insists he knew "at least as much" about the work involved in the class settlement,

Morgan.Br.37, he does not contest that Co-Lead Class Counsel had a sufficient knowledge base to properly allocate the fees according to each firm's work.[8] And, by "retaining jurisdiction over the implementation of the [Settlement], [the court] provide[d] adequate protection against any potential abuse." *Auto. Refinishing*, 2008 WL 63269, at *7; *see* Final.Appr.Order, R.557 ¶25, PageID#14586 (noting that district court "retain[ed] jurisdiction for purposes of ensuring compliance with the terms of the Settlement Agreement and any Order of the Court issued in connection therewith"); Settlement, R.452-2 §XVIII.L, PageID#6034 ("[A]ny disputes regarding fees, costs[,] and/or expenses amongst counsel, shall be subject to the exclusive jurisdiction of the Court."). The district court's delegation of initial allocation authority to Co-Lead Class Counsel was reasonable and not an abuse of its discretion.

2. Morgan resists this conclusion, beginning by claiming that the court failed to sufficiently explain its reason for delegating initial allocation authority to Co-Lead Class Counsel. Morgan.Br.32. But the explanation is both obvious and apparent on the face of the court's orders. In the initial order granting the fees motion, the district

---

[8] It is also hard to believe that Morgan had "at least as much" knowledge about the various firms' respective contributions, Morgan.Br.37, much less that he had "unsurpassed knowledge of each plaintiffs' firms' contribution," Morgan.Br.7, in light of the undisputed fact that he had by far the lowest number of approved hours among the four Co-Lead Counsel, *see* Mot.to.Clarify.Order, R.689, PageID#51084.

court found that Co-Lead Class Counsel were "best suited to apportion th[e] fees among the firms involved" because they were "most familiar with the work done by each firm and each firm's overall contribution to the litigation." Atty.Fee.Order, R.556, PageID#14574 (quoting *Auto. Refinishing*, 2008 WL 63269, at *7). And the district court reiterated that view in denying Morgan's motion to clarify, again explaining that "Co-Lead Class Counsel knew who was doing what and were assigning the work." Mot.to.Clarify.Order, R.689, PageID#51088. Morgan does not dispute the validity of this conclusion—likely because he could not dispute it.

It was not unreasonable for the district court to have concluded (as other courts have) that Co-Lead Class Counsels' intimate awareness of the work each of the myriad firms had contributed was sufficient justification for allowing them to make allocation decisions in the first instance, subject to the court's backstop. And while Morgan baldly asserts that the district court's findings were insufficiently detailed for his liking, Morgan.Br.32, a district court need not provide a litany of reasons to support a common-sense and generally accepted principle that no one is challenging.

Nor did the court need to include someone other than Co-Lead Class Counsel in the initial decisionmaking as to how allocate the common fund fees. Morgan cries foul about his exclusion from the process, but he tellingly does not make any actual legal argument that he was entitled to be a part of the initial allocation process. Nor could he. Morgan was part of the Co-Lead Counsel team in this case and had

responsibility to (among other things) "direct, supervise, and monitor the activities of Plaintiffs' counsel," make "work assignments to Plaintiffs' counsel," and "otherwise coordinate the work of all Plaintiffs' counsel." Cons.Order, R.28, PageID#565-568. But nothing in that order, or any other order, gave Morgan an entitlement to be part of allocating attorneys' fees at the end of the case. And there was good reason to exclude him. Given that he had the lowest number of authorized hours among the Co-Lead Counsels—and was specifically assigned to individuals *who were not part of the class*—it was reasonable to believe that he was not as informed on the work of the various firms as Co-Lead Class Counsel were.

Morgan's relative lack of awareness about the litigation happenings is further underscored by his surprise that he was excluded from the allocation process. Despite repeatedly asserting that Co-Lead Class Counsel improperly used his signature in the filing where the allocation delegation was proposed, *see* Morgan.Br.10-11, 17, 18, 38-39, 46-47, he nowhere provides evidence to substantiate such a serious claim. That is likely why the district court did not think there was fire for all the smoke Morgan tries to create. Furthermore, far from "intentionally conceal[ing]" the allocation delegation language from him, Morgan.Br.46, Co-Lead Class Counsel expressly requested it in open court *while Morgan was present*, moving for "appointed *class* counsel" to be given initial allocation authority, Fair.Hear.Tr., R.553, PageID#14523 (emphasis added). At no

time did Morgan object to the request. Nor did he object after Co-Lead Class Counsel publicly filed on the docket the proposed order memorializing those terms. *See* Rev.Proposed.Atty.Fee.Order, R.538-5, PageID#12374-400. Morgan's apparent lack of diligence should not be confused with Co-Lead Class Counsel having done anything untoward.

3. Those preliminary arguments aside, Morgan spends most of his brief complaining that the district court delegated too much authority to Co-Lead Class Counsel. But he rests on a demonstrably false premise. In Morgan's telling, the district court allowed Co-Lead Class Counsel to distribute fees however they see fit without any oversight. Morgan.Br.32-34. That narrative is a fiction. While the district court certainly authorized Co-Lead Class Counsel "to distribute the fees," Atty.Fee.Order, R.556, PageID#14578, and did not compel Morgan's inclusion in that process, the court explicitly retained jurisdiction over the entirety of the Settlement as well as "any Order of the Court issued in connection therewith," which included any order awarding fees. Final.Appr.Order, R.557, PageID#14586. Indeed, the Settlement itself provides that the district court retains "jurisdiction" over "any disputes regarding fees, costs[,] and/or expenses amongst counsel." Settlement, R.452-2 §XVIII.L, PageID#6034.

Morgan simply ignores the court's order and settlement provision it furthers. In all events, the upshot is that the district court permitted Co-Lead Class Counsel

to make the initial allocation of fees (based on their superior knowledge of the various plaintiffs' firms' respective contributions), while retaining the authority to review and override any allocation determinations should anyone object—which, as explained below, no one (including Morgan) did. That suffices to defeat Morgan's resort to snippets from secondary sources stating that a district court should retain reviewing authority to ensure no improper actions occur. *See* Morgan.Br.34 (citing, e.g., 5 Newberg & Rubenstein on Class Actions §15:23 (6th ed. 2024)); *see also* Final.Appr.Order, R.557, PageID#14586; Settlement, R.452-2 §XVIII.L, PageID#6034. This was a run-of-the-mill delegation, not an out-of-the-norm abdication, and it was reasonable for all the reasons stated above.

4. Unable to deny that the district court retained ample supervisory authority or that it followed a common course this Court has explicitly blessed, *see In re Polyurethane Foam Antitrust Litig.*, 168 F.Supp.3d 985, 1007 (N.D. Ohio 2016) (discussing this Court's decision in *Bowling*, 102 F.3d 777), Morgan makes the sweeping argument that *any* delegation of initial fee-allocation authority is verboten under Federal Rule of Civil Procedure 23(h), and that any contrary precedent that predates Rule 23(h) (such as *Bowling*) is now a "dead letter." Morgan.Br.33-34. Morgan "is wrong": Rule 23(h) did not usher in a sea-change. *Polyurethane*, 168 F.Supp.3d at 1006 (rejecting the argument that "Rule 23(h) requires the district court to set and allocate the fee award").

To be sure, fee awards "were not subject to an *enumerated* reasonableness requirement" before Rule 23(h)'s addition in 2003. Morgan.Br.33 (emphasis added). But courts had long reviewed both fee awards and fee allocations to ensure their reasonableness—and, as part of that review, they had long blessed the common practice the district court followed here. Even Morgan's own cases agree on this point: As the Third Circuit explained in *In re Wawa, Inc. Data Securities Litigation*, 85 F.4th 712 (3d Cir. 2023) (cited at Morgan.Br.33), Rule 23(h) did not break new ground; it simply "incorporate[d] the reasonableness standard that had long been 'customary' in common fund cases and class actions." *Id.* at 723-24. This Court's recognition in *Bowling* that the particulars of "distributions among [counsel]" are irrelevant to the ultimate inquiry, provided that class counsel "are paid only what their *collective* work is worth," 102 F.3d at 781 (emphasis added), thus remains valid, *see Polyurethane*, 168 F.Supp.3d at 1006-07—and confirms that the district court's decision to follow that guidance was not an abuse of discretion.

In addition to misstating the law, Morgan's contrary argument misses the forest for the trees. No one denies that "[f]ederal courts have an independent obligation to ensure the reasonableness of a fee award," Morgan.Br.41, or that courts must ensure that class counsel fulfill their "fiduciary obligations," Morgan.Br.21. But a court's ultimate charge—under Rule 23(h) and the preexisting caselaw it incorporated—is to determine whether class counsel fulfilled its fiduciary

obligations *to the class*.[9]  *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013) (a court's duty in considering a proposed settlement and fee award is to "protect the interests of the persons most affected by the litigation—namely, the class").  And as this Court has previously explained, how "class counsel ultimately divide [their collective] fee[s] among themselves" is generally "irrelevant" to that determination.  *Bowling*, 102 F.3d at 781; *see also Warfarin*, 391 F.3d at 533 n.15 (allocation determinations are a "'private matter' for the attorneys to resolve amongst themselves").  So long as a district court retains authority to serve as a backstop to resolve potential disputes that may affect the class or arise out of unfair self-dealing, as the court indisputably did here, there is no abuse of discretion.

*In re High Sulfur Content Gasoline Products Liability Litigation*, 517 F.3d 220 (5th Cir. 2008) (cited at Morgan.Br.33-35), which of course is nonbinding, is not to the contrary.  For starters, unlike in this case, *see* pp.40-42, *infra*, timely objections to specific fee allocations were made in *High Sulfur*.  As one example, a firm in *High Sulfur* objected after it received less than one-third of the amount it

---

[9] Thus, to the extent that the Advisory Committee Notes instruct a district court to consider the "amount and mode of payment of attorney fees" or "[s]ide agreements," it is an instruction to make sure that the attorneys' fee award does not harm *class members*.  *See also* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3) (requiring disclosure of any "agreement made in connection with the propos[ed settlement]" so that the court can adequately determine whether "the relief provided *for the class* is adequate" (emphasis added)).  Notably, however, there are no such side agreements in this case.  *See* Pls'.MOL.ISO.Final.Appr., R.518-1, PageID#10921-922.

requested in fees. 517 F.3d at 225-26. That serious mismatch evidenced that neither the firms involved nor the court could discern how attorney work was valued. Put differently, the district court there *did* effectively abdicate all responsibility to superintend fee disputes among counsel. Here, by contrast, the district court was well aware that the law firm Zoll & Kranz LLC was engaged to keep and audit time and expense records for the many plaintiffs' firms in the case. *See* Expense.Guide.Order, R.33, PageID#785. And Morgan does not suggest that anyone lacked access to information about their approved hours and expenses; nor does he dispute that the memorandum accompanying the court's order explained what would and would not count as reimbursable time and expense submissions, *see id.*, PageID#787-793. The respective law firms and the court, therefore, could discern how attorney work was valued, and a firm could have objected if there had been any mismatch. In the end, then, all *High Sulfur* proves is Morgan's truism that "[e]very class action settlement is different, so an approved fee allocation method in one case might be rejected in another." Morgan.Br.31; *see also* Morgan.Br.31-32.

The district court here retained authority to superintend all orders arising out of the Settlement, ensuring that it could review each firm's allocation, should any object. Against that backdrop, the mere fact that the court overruled Morgan's objection does not mean it erred. It just means the court exercised its ample discretion in a way that Morgan does not like. And, to state the obvious, being

dissatisfied with an exercise of discretion is not a basis for reversal. The district court did not abuse its discretion in "declining to 'deviate from the accepted practice of allowing counsel to apportion fees amongst themselves.'" *Polyurethane*, 168 F.Supp.3d at 1006 (quoting *Warfarin*, 391 F.3d at 533 n.15).

5. As a last-ditch effort, Morgan resorts to hyperbole. Morgan is certainly correct that it would be improper for a court to give class counsel truly unbridled free rein to "divide the award amo[ng] themselves in *any* manner they deem satisfactory." Morgan.Br.32 (quoting *In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987)). But that is simply not what happened here. Along with retaining authority over all parts of the Settlement, *including allocation objections*, the court provided "guardrails" for Co-Lead Class Counsels' allocation determination, authorizing Co-Lead Class Counsel to distribute the fees only "in a manner that, in the judgment of Co-Lead Class Counsel, *fairly compensate[d] each attorney and/or firm for their contribution to the prosecution of Plaintiffs' class claims*." Atty.Fee.Order, R.556, PageID#14578 (emphasis added). *Contra* Morgan.Br.31. And, again, the Settlement itself provides that the district court retains "jurisdiction" over "any disputes regarding fees, costs[,] and/or expenses amongst counsel." Settlement, R.452-2 §XVIII.L, PageID#6034. No matter how many times Morgan says otherwise, Co-Lead Class Counsel simply was not free to distribute the fees in any manner they deemed satisfactory.

There is thus zero reason to credit Morgan's assertions that Co-Lead Class Counsel may have engaged in self-dealing or selected winners and losers from the plaintiffs' firms. *See* Morgan.Br.34-37. By retaining jurisdiction over the Settlement and all orders related to it (including the Attorneys' Fee Order), the district court maintained authority over the allocation should any firm object. That alone fatally undermines Morgan's complaints, for which Morgan offers not an iota of evidence. If Co-Lead Class Counsel had tried to "tak[e] every cent of the fee award and leav[e] their co-counsel penniless," Morgan.Br.35, or if Co-Lead Class Counsel had unfairly "pick[ed] winners and losers among the plaintiffs' firms," Morgan.Br.37-38, then one of the other firms certainly would have objected. But that dog has not barked. Similarly, Co-Lead Class Counsel could not have bought off competitors "with the promise of fees untethered from hours worked or case performance," Morgan.Br.35; those deals would have needed to be disclosed to the court under Rule 23(e), and Co-Lead Class Counsel already attested that no such agreements exist in this case, *see* Pls'.MOL.ISO.Final.Appr., R.518-1, PageID#10921-922. Morgan is simply attacking a straw man.

### B. The District Court Did Not Abuse Its Discretion in Approving Co-Lead Class Counsel's Allocation of Fees.

1. At the outset, Morgan's challenge to his allocation is forfeited. Morgan faults the district court for not reviewing the allocations up-front (i.e., before disbursement) and for not having dug into specific allocations—even though no one

asked it to. But he offers no compelling reason why the court needed to do so given that no one asked it to. That includes Morgan himself: At no point in his motion to clarify did he even hint that he had a problem with his specific allocation. Morgan.MOL.ISO.Mot.to.Clarify, R.664-1, PageID#46335, 46343-344.

Had Morgan raised a specific concern with his allocated share, there is no reason to think the court would not have probed into Co-Lead Class Counsel's methodology to determine if any adjustments needed to be made. The issue simply never presented itself because neither Morgan nor any other firm complained that they were paid an inappropriate amount. That suffices to defeat Morgan's sky-is-falling rhetoric and his basic argument. After all, it cannot be said that the district court erred, much less that it abused its discretion, by not answering a question that was never asked (and that it had no duty to investigate *sua sponte*).

Morgan now claims that he informed the district court at a hearing that (in his view) his firm's allocation did not reflect its value-add to the case. Morgan.Br.36-37 (quoting and citing a transcript from a November 1, 2024 telephonic conference).[10] But even accepting Morgan's characterization of what he said at the

---

[10] While the district court originally restricted that transcript from being used by the parties, it subsequently ordered that those restrictions be lifted in response to an unopposed motion by Morgan. Nov.1.2024.Tr.Order, R.729, PageID#51830. However, it does not appear that Morgan ensured that the transcript was part of the record, so it is not clear that the record of the hearing is properly before this Court.

hearing, Morgan elides the more important point: He *did not raise the issue in his motion to clarify*. In fact, the specific requests in his motion were for the court to "include a process for judicial review of the fee allocation" or "permit judicial oversight of the allocation." Morgan.MOL.ISO.Mot.to.Clarify, R.664-1, PageID#46632, 46639. None of that put the court on notice that Morgan was asking for a review of his allocation. That dooms his arguments on appeal, because arguments raised for the first time at hearings or oral arguments are not properly before a court. *See, e.g.*, *Marlar*, 525 F.3d at 450 n.6; *Lane v. City of LaFollette*, 490 F.3d 410, 420 (6th Cir. 2007); *Hertz Schram PC v. FBI*, 2014 WL 764682, at *10 n.4 (E.D. Mich. Feb. 25, 2014). The district court cannot be faulted for not addressing complaints on that front.

2. Forfeiture aside, Morgan's arguments fail. Morgan claims there is a "mismatch" between the district court's use of the percentage-of-the-fund method in awarding the aggregate attorneys' fee award and its allowance for Co-Lead Class Counsel to use a more objective, hours-based approach. Morgan.Br.43; *see* Attys.Fee.Order, R.556, PageID#14562-575. Morgan is wrong for a host of reasons.

As an initial matter, the expense guideline order telegraphed what payment would be based on. *See* Expense.Guide.Order, R.33, PageID#787 ("[W]e anticipate

---

*Cf. Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 468 (6th Cir. 2022). Interested-Party-Appellees have thus refrained from quoting from the transcript in this brief.

that *time expended* for the class or Common Benefit will be compensated via a class action fee application …." (emphasis added)); *id.*, PageID#788-789 ("Counsel shall be eligible for reimbursement for time and efforts expended for class and/or Common Benefit work" if certain requirements were met.). Morgan also makes no developed argument why using such an objective methodology was unreasonable in a circumstance where an aggregate attorneys' fee had to be allocated among three dozen different firms—likely because there is no argument.

Morgan is certainly entitled to his view that his firm played a "critical role" in "convincing the settling defendants that class resolution would be preferable to individual litigation" that was not reflected in his fee allocation. Morgan.Br.36-37. But he cannot avoid the fact that, at bottom, what he really wants is special treatment, as he does not dispute the district court's findings that his hours were given the same multipliers as Co-Lead Class Counsel or any of the other firms. *See* Mot.to.Clarify.Order, R.689, PageID#51083-084. Nor does he dispute that his firm had the lowest number of approved hours of any Co-Lead Counsel. *Id.*, PageID#51084. In short, Morgan wants more pay for less work based on some subjective assessment that he does not explain. But he nowhere indicates how that methodology would be fair (because it would not be). In short, it was not an abuse of discretion for the district court to condone the use of Co-Lead Class Counsel's more objective allocation model and methodology instead of a more subjective

analysis that really would have threatened opening the door for Co-Lead Class Counsel to "do whatever they want[ed] with the fee award." Morgan.Br.40.

3. Finally, Morgan casts more baseless aspersions at Co-Lead Class Counsel. Morgan.Br.44-47. He faults Co-Lead Class Counsel for using multipliers to calculate each firm's share of the fee award and asserts that "nobody understands" the multipliers except for Co-Lead Class Counsel and all but accuses Co-Lead Class Counsel of creating a "slush fund" for themselves by assigning themselves a Co-Lead multiplier[11] and of "pick[ing] winners and losers when allocating the fee award" such that "the district court let them get away with favoritism and self-dealing." Morgan.Br.44. But he has nothing to support this rank speculation. And given that no other firm has objected to its allocation, it seems that all other relevant parties—which includes firms with many decades of class-action experience—sufficiently understand the multipliers that Co-Lead Class Counsel employed. Had Co-Lead Class Counsel given themselves a slush fund and/or picked winners and losers among the other firms, surely at least one other firm would have objected. The silence here is deafening and fatal for Morgan's accusations.

Left with nowhere else to go, Morgan reiterates that it was not his fault that he did not object to the quick-pay provision, or the delegation of authority sooner

---

[11] A multiplier that Morgan himself benefited from as a Co-Lead and, therefore, has no standing to complain about here. *See Flint*, 63 F.4th at 503.

because he could not have foreseen any issue with the quick-pay provision at the time of signing the Settlement and he was left in the dark on the delegation issue. Morgan.Br.45-47. As already discussed, this Court need not take these arguments seriously given that objections to the Settlement causing delayed payments to class members while allowing the plaintiffs firms to receive their allocation was always a possibility, Morgan has provided no evidence to substantiate the claim that Co-Lead Class Counsel improperly used his signature, and Morgan was present in court when Co-Lead Class Counsel requested the allocation delegation.

*      *      *

Contrary to Morgan's understanding, the district court maintained authority to review allocation decisions in this case. The court has not sought granularity on Co-Lead Class Counsel's methodology because it has not been faced with a firm raising a specific complaint about its allocation share. There is nothing unreasonable about the way the district court has proceeded on this matter, and nothing Morgan has argued changes that. The district court did not abuse its ample discretion.

## CONCLUSION

For the reasons set forth above, this Court should affirm.

Respectfully submitted,

s/Paul D. Clement

PAUL D. CLEMENT
MATTHEW D. ROWEN
KYLE R. EISWALD[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

[*] Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Interested Parties-Appellees*

May 2, 2025

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,918 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and 6th Cir. Rule 32(b).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 with 14-point Times New Roman font.

Date:  May 2, 2025

<u>s/Paul D. Clement</u>
Paul D. Clement

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2025, I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit

by using the CM/ECF system.  I certify that all participants in this case are registered

CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Paul D. Clement</u>
Paul D. Clement

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Interested Parties-Appellees, pursuant to 6th Circuit Rules 28(a) and 30(g), designate the following relevant documents in the electronic record:

| Record Entry | Description of Document | Page ID # |
|:---:|:---:|:---:|
| 20 | Order re. Class Structure | 127 |
| 28 | Order re. Consolidation and Interim and Co-Lead Class Counsel | 549 |
| 30 | Consolidation Order | 665 |
| 33 | Procedural Case Management Order No. 1: Establishing Class/Common Benefit Fee and Expense Fund and Guidelines Related Thereto | 782 |
| 138 | First Amended Master Consolidated Class Action Complaint and Jury Demand | 1771 |
| 452 | Motion for Preliminary Approval of Settlement, Appointment of Lead Class Counsel, and Approval of Notice | 5955 |
| 452-2 | Class Action Settlement Agreement | 6001 |
| 458 | Order Granting Preliminary Approval of Settlement, Appointment of Lead Class Counsel, and Approval of Notice | 6174 |
| 518 | Motion for Final Approval of Settlement | 10896 |
| 518-1 | Plaintiffs' Memorandum in Support of Final Approval of Settlement | 10899 |
| 518-2 | Declaration of M. Elizabeth Graham | 10942 |
| 518-9 | Declaration of T. Michael Morgan | 11183 |
| 520 | Motion for Award of Attorneys' Fees and Expenses and Service Awards | 11304 |
| 520-1 | Plaintiffs' Memorandum in Support of Application for Attorneys' Fees and Expenses and for Service Awards | 11307 |

| Record Entry | Description of Document | Page ID # |
|:---:|:---:|:---:|
| 526 | Objection to Motion for Award of Attorneys' Fees and Expenses and For Service Awards | 11568 |
| 538 | Reply in Support of Application for Attorneys' Fees and Expenses and for Service Awards | 12344 |
| 538-5 | [Revised Proposed] Order Granting Attorneys' Fees, Expenses, and Service Awards | 12374 |
| 553 | Transcript of Fairness Hearing | 14423 |
| 556 | Order Granting Attorneys' Fees | 14547 |
| 557 | Final Settlement Approval Order | 14580 |
| 664 | Morgan & Morgan & Co-Lead Counsel T. Michael Morgan's Motion to Clarify, Alter, Amend or Reconsider Order (ECF 556), and to Enjoin Distribution of Attorneys' Fees Prior to Resolution of Appeal | 46330 |
| 664-1 | Morgan & Morgan & Co-Lead Counsel T. Michael Morgan's Memorandum in Support of Motion to Clarify, Alter, Amend or Reconsider Order (ECF 556), and to Enjoin Distribution of Attorneys' Fees Prior to Resolution of Appeal | 64332 |
| 689 | Order Denying Motion to Clarify, Alter, Amend or Reconsider Order (ECF 556), and to Enjoin Distribution of Attorneys' Fees Prior to Resolution of Appeal | 51079 |
| 713 | Morgan & Morgan and Co-Lead Counsel T. Michael Morgan's Notice of Appeal | 51604 |
| 729 | Order Granting Motion to Lift Restrictions on Use of Transcript | 51830 |